******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* DENNIS NEWTON
## (AC 47587)

Alvord, Clark and Westbrook, Js.

### *Syllabus*

Convicted, following a conditional plea of nolo contendere, of the crimes of possession of narcotics with intent to sell and criminal possession of a firearm, the defendant appealed. The defendant had been charged on the basis of evidence discovered during a parole search of his residence, and substances seized during the search were field tested by law enforcement officers for the presence of narcotics. He claimed, inter alia, that the trial court improperly denied his motion to suppress on the ground that he lacked standing. *Held*:

The trial court properly denied the defendant's motion to suppress the evidence seized during the search on the ground that he lacked standing, as the court's legal conclusion with respect to the fourth amendment challenge to the search of the residence was legally and logically correct because it was supported by its finding that the defendant, who had agreed to the conditions of his parole, did not have an expectation of privacy in his residence during the search.

This court declined to review the defendant's claim that the trial court abused its discretion by denying his motion to compel, as the denial of a motion to compel disclosure is not one of the issues set forth in the statute (§ 54-94a) governing an appeal from a judgment rendered following a plea of nolo contendere.

The trial court properly denied the defendant's pretrial motion to dismiss the narcotics charges against him for insufficient evidence, as the court determined that probable cause existed on the basis of the positive field tests.

Argued February 9—officially released August 11, 2026

### *Procedural History*

Substitute information charging the defendant with two counts of the crime of possession of narcotics with intent to sell and one count of the crime of criminal possession of a firearm, brought to the Superior Court in the judicial district of Waterbury, geographical area number four, where the court, *Papastavros, J.*, denied the defendant's motions to compel disclosure and to suppress; thereafter, the court, *Grispin, J.*, denied the defendant's motion to dismiss; subsequently, the defendant was presented to the court, *Klatt, J.*, on a conditional plea of nolo contendere to one count of possession of narcotics

with intent to sell and one count of criminal possession of a firearm; judgment of guilty in accordance with the plea; thereafter, the state entered a nolle prosequi as to one count of possession of narcotics with intent to sell, and the defendant appealed to this court. *Affirmed*.

*Nicole Van Lear*, deputy assistant public defender, for the appellant (defendant).

*Meryl R. Gersz*, assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Don E. Therkildsen*, *Jr.*, and *Michael Riley*, supervisory assistant state's attorneys, for the appellee (state).

*Opinion*

ALVORD, J. Following a conditional plea of nolo contendere made pursuant to General Statutes § 54-94a, the defendant, Dennis Newton, appeals from the judgment of conviction of one count of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a) (1) (A) and one count of criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1). The conditional plea followed the trial court's denial of the defendant's motion to dismiss for insufficient evidence, which was preceded by the court's denials of his motion to compel disclosure and motion to suppress. On appeal, the defendant claims that the court (1) improperly denied his motion to suppress on the ground that he lacked standing; (2) abused its discretion in denying his motion to compel disclosure; and (3) improperly denied his motion to dismiss on the ground that the state presented sufficient evidence to establish probable cause. We affirm the judgment of conviction.

On March 15, 2024, the state recited the following facts prior to the court's acceptance of the defendant's plea of nolo contendere. On December 27, 2021, the Waterbury Police Department, in conjunction with the Department of Correction's Division of Parole and Community Services (Division of Parole and Community Services) conducted a parole search on a Waterbury residence.

The defendant was the target of the search. While at the residence, law enforcement secured the defendant and found in a bedroom of the residence a bag containing cocaine, a scale, and an operable firearm. At the time of the search, the defendant was a convicted felon and not eligible to possess a firearm.

The following procedural history is relevant to our review of this appeal. The defendant was arrested on December 27, 2021, and was charged in a long form information with two counts of possession of narcotics with intent to sell in violation of §21a-277 (a) (1) (A), which were to be tried to a jury. He also was charged with criminal possession of a firearm in violation of §53a-217 (a), which was severed from the possession of narcotics counts and was to be tried to the court. The defendant filed pretrial motions, including a motion to suppress in May 2022 and a motion to compel disclosure in August 2022, both of which the court, *Papastavros, J.,* denied. On February 20, 2024, the defendant filed a pretrial motion to dismiss the possession of narcotics charges for insufficient evidence, which the court, *Grispin, J.,* denied without prejudice. Shortly thereafter, on March 15, 2024, the defendant filed and the court, *Klatt, J.*, accepted a plea of nolo contendere on one of the charges of possession of narcotics and the charge of criminal possession of a firearm conditioned on the right to take an appeal pursuant to §54-94a. The state nolled the remaining charge of possession of narcotics. On the same day, the court sentenced the defendant to a term of incarceration of three years, two years of which were the mandatory minimum. Additional procedural history will be set forth as necessary.

I

The defendant first claims that the court improperly denied his motion to suppress on the ground that he did not have standing.[1] In support of this claim, the

[1]As will be addressed in this opinion, we recognize the trial court's use of the term "standing" as a shorthand employed by courts when considering whether a defendant challenging the constitutionality of a

defendant advances several arguments, most of which concern his general contention that the court misapplied the relevant law. We are not persuaded.

The following additional procedural history is relevant to our review of this claim. In May 2022, the defendant filed a motion to suppress "tangible evidence seized during any search of [his] person or property." At the beginning of the hearing on the motion to suppress held on August 16, 2022, defense counsel stated, "I would call Officer [Jennifer] Desena as a witness to show standing." On direct examination, Desena testified that she was the defendant's parole officer between February and December 2021, that the defendant lived at his mother's apartment, that his mother served as his parole sponsor, that a search of the apartment was conducted on December 27, 2021, and that drugs and a firearm were recovered during the search.

When asked on cross-examination whether a sponsor of a parolee "has to agree to waive their expectation of privacy and allow you to search their home," Desena responded, "Yes." Also during cross-examination, the prosecutor introduced as an exhibit the Statement of Understanding and Agreement Conditions of Parole form (parole agreement) signed by the defendant, and asked Desena to read the fifth condition, which stated: "I will submit to a search of my person, possessions, vehicle, residence, business or other area under my control at any time, announced or unannounced, with or without cause, by parole or its agent to verify my compliance with the conditions of my parole." The prosecutor then asked Desena, "[D]oes [the defendant] waive—pursuant to [the search condition] you just read—all of his expectation of privacy for being searched?" Desena responded, "Yes."

Thereafter, defense counsel argued that the defendant "had an expectation of privacy in his home." The

search possesses the requisite reasonable expectation of privacy in the area searched. See *Byrd* v. *United States*, 584 U.S. 395, 410, 138 S. Ct. 1518, 200 L. Ed. 2d 805 (2018); *State* v. *Houghtaling*, 326 Conn. 330, 341, 163 A.3d 563 (2017), cert. denied, 584 U.S. 949, 138 S. Ct. 1593, 200 L. Ed. 2d 776 (2018).

prosecutor responded by asserting that parolees "have very little, if any, expectation of privacy" and that, by signing the search condition, the defendant had "waiv[ed] [his] expectation of privacy in [his] person, in [his] possessions, in [his] home where [he] is living. When he waives that expectation of privacy, he waives his fourth amendment protection." Defense counsel countered that the defendant's "expectation of privacy is diminished, but it exists."

The court found that the defendant signed the parole agreement containing the search condition and that the defendant's sponsor, his mother, agreed to have her apartment searched as a condition of her sponsorship. The court then stated: "Having made these findings, the court further finds that this defendant/parolee, [the defendant], did not have an expectation of privacy at his residence on the day of the search. He waived any expectation of privacy by agreeing to the terms of his parole. He had no fourth amendment protection under *Samson* [v. *California*, 547 U.S. 843, 846, 126 S. Ct. 2193, 165 L. Ed. 2d 250 (2006)]. Therefore, [the defendant] does not have standing to challenge this search. That is the order of the court."

We next set forth the relevant legal principles and standard of review governing the defendant's claim. "The fourth amendment to the United States constitution . . . provides . . . [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . . The capacity to claim the protection of the fourth amendment does not depend upon a property interest, permanency of residence, or payment of rent but upon whether the person who claims fourth amendment protection has a reasonable expectation of privacy in the invaded area. . . .

"To receive fourth amendment protection against unreasonable searches and seizures, a defendant must have a legitimate expectation of privacy in the [subject of the search]. . . . Absent such an expectation, the subsequent police action has no constitutional ramifications. . . .

To determine whether a defendant has a reasonable expectation of privacy in an invaded place, we follow the test laid out by the United States Supreme Court in *Katz* v. *United States*, [389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)]. . . . The *Katz* test has both a subjective and an objective prong: (1) whether the [person contesting the search] manifested a subjective expectation of privacy with respect to [the invaded premises or seized property]; and (2) whether that expectation [is] one that society would consider reasonable. . . . This determination is made on a case-by-case basis. . . . The burden of proving the existence of a reasonable expectation of privacy rests [with] the defendant. . . .

"It is well settled that [w]hen reviewing a trial court's denial of a motion to suppress, [a] finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]hen a question of fact is essential to the outcome of a particular legal determination that implicates a defendant's constitutional rights . . . and the credibility of witnesses is not the primary issue, our customary deference to the trial court's factual findings is tempered by a scrupulous examination of the record to ascertain that the trial court's factual findings are supported by substantial evidence. . . . [When] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the [trial court's] memorandum of decision . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Jacques*, 332 Conn. 271, 278–79, 210 A.3d 533 (2019).

Also relevant to our review of this claim is the United States Supreme Court's holding in *Samson* v. *California*, supra, 547 U.S. 846. In *Samson*, the petitioner was on parole when an officer conducted a suspicionless search of his person. Id., 846–47. The court recognized that, under California law, "every prisoner eligible for release on state parole 'shall agree in writing to be subject to search or seizure by a parole officer or other peace officer

at any time of the day or night, with or without a search warrant and with or without cause.' Cal. Penal Code Ann. §3067 (a) (West 2000)." Id., 846. The court considered "whether a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the [f]ourth [a]mendment." Id., 847. The court acknowledged that, "[o]n th[e] continuum [of state-imposed punishments], parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment." Id., 850.

Turning to the facts, the court in *Samson* noted that "the parole search condition under California law . . . was clearly expressed to [the] petitioner." (Citations omitted; internal quotation marks omitted.) Id., 852. The court then examined "the totality of the circumstances pertaining to [the] petitioner's status as a parolee, an established variation on imprisonment . . . including the plain terms of the parole search condition" and concluded "that [the] petitioner did not have an expectation of privacy that society would recognize as legitimate." (Citation omitted; internal quotation marks omitted.) Id. The court found "salient" the fact that the search condition was "clearly expressed" to the petitioner, noting that "[h]e signed an order submitting to the condition and thus was unambiguously aware of it." (Internal quotation marks omitted.) Id. Notwithstanding its determination that the petitioner did not have a reasonable expectation of privacy, the court proceeded to assess the state's interest in supervising parolees and reducing recidivism, and, thereafter, concluded that "the [f]ourth [a]mendment does not prohibit a police officer from conducting a suspicionless search of a parolee." Id., 857.

In the present case, the defendant argues that the court misapplied the law, asserting that its "reliance on *Samson* to deny standing directly conflicts with *Samson*'s holding, which was decided on reasonableness grounds

and involved a careful balancing of the particular interests involved." We are not persuaded.

Prior to balancing the interests involved, the court in *Samson* determined that the petitioner did not have an expectation of privacy that society would recognize as legitimate. *Samson* v. *California*, supra, 547 U.S. 852. In reaching this determination, the court considered the petitioner's parole status and the plain terms of the search condition he signed. Id. Like the petitioner in *Samson*, the defendant in the present case had a diminished expectation of privacy by way of his parole status. Additionally, the court found that the defendant signed and initialed his conditions of parole, which provided in part, "I will submit to a search of my person, possessions, vehicle, residence, business or other area under my control at any time, announced or unannounced, with or without cause, by parole or its agent to verify my compliance with the conditions of my parole." The court further noted that, in order to serve as the defendant's parole sponsor, the defendant's mother was required to agree to a search of her house, where he was living. After making these findings, the court determined that, under *Samson*, the defendant did not have an expectation of privacy and denied the motion to suppress. In light of the court's findings and analysis, we cannot find that it deviated from *Samson* in its determination that the defendant did not have an expectation of privacy.

Although the defendant correctly points out that the court did not balance the interests of the state and the defendant, we do not find that such an analysis was necessary because the court had found that the defendant did not have an expectation of privacy. "To receive fourth amendment protection against unreasonable searches and seizures, a defendant must have a legitimate expectation of privacy in the [subject of the search]." *State* v. *Jacques*, supra, 332 Conn. 278. In the absence of an expectation of privacy, the defendant could not claim

protection under the fourth amendment; therefore, the court did not have to proceed further with its analysis.[2]

Under the same line of argument, the defendant contends that "the trial court erroneously relied on *Samson* for the proposition that no parolee anywhere has standing to challenge any warrantless search." In considering this argument, we find instructive the concurring opinion in *State* v. *Jacques*, supra, 332 Conn. 305 (*Kahn, J.*, concurring), which considered whether a defendant on parole would have had an expectation of privacy in his apartment. The concurring opinion provided that, "[a]lthough probationers and parolees are subject to a degree of impingement upon privacy that would not be constitutional if applied to the public at large . . . the law requires that such greater intrusions occur pursuant to a rule or regulation that itself satisfies the [f]ourth [a]mendment's reasonableness requirement . . . . For this reason, the particular scope of a parolee's reasonable expectation of privacy depends on the conditions of parole." (Citations omitted; internal quotation marks omitted.) Id., 304 (*Kahn, J.*, concurring). In addition to *Samson*, the concurring opinion referenced *United States* v. *Robertson*, 239 F. Supp. 3d 426, 448 (D. Conn. 2017), appeal withdrawn, Docket No. 17-1845, 2017 WL 6326976 (2d Cir. August 25, 2017),[3] to support its

---

[2]The defendant contends that the *Samson* "court's finding of reasonableness was driven by particular governmental interests animating the California statute that are not present here." We note, however, that courts, including this one, have considered the dual interests of state governments generally in promoting rehabilitation and reintegration, as well as public safety. See *United States* v. *Knights*, 534 U.S. 112, 121, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001); see also *State* v. *Romero*, 199 Conn. App. 39, 54, 235 A.3d 644 (recognizing "the state's dual interests in facilitating the defendant's rehabilitation and protecting society from any future criminal violations" in context of conditions of probation, in which defendant agreed to submit to searches of his residence), cert. denied, 335 Conn. 955, 238 A.3d 731 (2020).

[3]The concurring opinion summarized *United States* v. *Robertson*, supra, 239 F. Supp. 3d 426, as follows: "[T]he court rejected the government's contention that the defendant's status on federal supervised release functioned as a forfeiture of all his constitutional rights to the sanctity of his home. The court looked to the defendant's conditions

conclusion that "[t]he relevant case law makes clear that the standard and specific conditions of the defendant's release would define the scope of the defendant's reasonable expectation of privacy in his home . . . ." *State* v. *Jacques*, supra, 332 Conn. 305 (*Kahn*, *J.*, concurring). The concurring opinion posited that, if the search "would have complied with the defendant's parole conditions at the time of his arrest—whatever those may have been—it did not constitute an invasion of his reasonable expectation of privacy." Id., 306.

We agree with the principle stated in the concurring opinion in *Jacques* that the scope of a parolee's reasonable expectation of privacy in an area depends on the conditions of parole. In the present case, the court considered not only the defendant's parole status, but also the condition in which he agreed to submit to searches "at any time, announced or unannounced, with or without cause, by Parole or its agent to verify my compliance with the conditions of my parole." In his reply brief, the defendant further argues that the search condition he signed is standard to parole and, thus, it is presumed that the court's "holding would apply broadly to all parolees." We find this argument unconvincing because, even if the search condition is standard across parole agreements, it does not follow that all searches of parolees are standard, as there may be instances in which a search fails to comply with the terms of the search condition. In that situation, the parolee would not have been made unambiguously aware of the search because it fell outside the parameters specified in the search condition's terms and, thus, the parolee would maintain an expectation of privacy as it concerns the search condition. The parolee's ability to

of supervised release, which provided only that [t]he defendant shall permit *a probation officer* to visit the defendant at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view *by the probation officer. . . .* The court reasoned that the conditions of release did not extend to the police officers who were unaccompanied by a probation officer when they searched the defendant's apartment." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Jacques*, supra, 332 Conn. 304–305 (*Kahn*, *J.*, concurring).

invoke his fourth amendment protections, therefore, would not be limited by signing the search condition, as was the case here. Accordingly, we disagree with the defendant's contention that the court's holding stands for the broad proposition that no parolee can challenge a warrantless search.

The defendant next argues that the holding in *Samson* "is extremely limited, and arguably not applicable at all to this case due to the material differences in circumstances underlying the court's reasoning and holding." The defendant seeks to distinguish *Samson* on two bases. We disagree with both contentions.

First, the defendant argues that *Samson* "is specific to suspicionless searches conducted under the authority of a statute, [whereas] the search condition here is under no such authority." Although the search condition assessed by the court in *Samson* was authorized by a California statute, we are not convinced that this fact contributed to the court's holding. As noted, the court in *Samson* considered "the totality of the circumstances pertaining to [the] petitioner's status as a parolee . . . including the plain terms of the parole search condition" and concluded "that [the] petitioner did not have an expectation of privacy that society would recognize as legitimate." (Citations omitted; internal quotation marks omitted.) *Samson* v. *California*, supra, 547 U.S. 852. In its assessment of the relevant circumstances, the court did not identify the statute authorizing the search condition as impacting its consideration of the petitioner's expectation of privacy.

Moreover, without reference to an authorizing statute, courts, including this one, have found that a search condition diminished a probationer's reasonable expectation of privacy while advancing the state's interests, ultimately concluding that a warrantless search of a residence based on reasonable suspicion was lawful. See *United States* v. *Knights*, 534 U.S. 112, 119–21, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001) (probation condition significantly diminished petitioner's expectation

of privacy, while furthering state's interests, leading to conclusion that intrusion on probationer's significantly diminished privacy interests was reasonable when only reasonable suspicion existed); see also *State* v. *Romero*, 199 Conn. App. 39, 53–54, 235 A.3d 644 ("[t]he defendant's probation search condition diminished his reasonable expectation of privacy and furthered the state's dual interests in facilitating the defendant's rehabilitation and protecting society from any future criminal violations by him"), cert. denied, 335 Conn. 955, 238 A.3d 731 (2020). We recognize that these holdings concern warrantless searches of probationers with diminished expectations of privacy, rather than searches of parolees with no expectation of privacy, as the case is here. We, however, cannot ascertain, nor does the defendant offer legal authority to demonstrate, why a probationer's search condition does not have to be authorized by statute for it to either reduce a probationer's expectation of privacy or lessen the cause required to search, but a parolee's search condition does. Accordingly, we are not persuaded that the lack of a statute or regulation authorizing the defendant's search condition necessitates the conclusion that the search of his residence ran afoul of the fourth amendment.

Second, the defendant seeks to distinguish *Samson* by asserting that the text of the California statute presented a material difference in that it defines "the scope of the condition and necessary safeguards against arbitrary searches." We note, however, that the search condition in the present case similarly limits searches to those necessary "to verify . . . compliance with the conditions of . . . parole." This condition, which limits searches to those conducted for purposes of verifying parole compliance, necessarily would prohibit searches that are arbitrary or conducted for purposes of harassment. Accordingly, we reject the defendant's efforts to distinguish *Samson*.[4]

The defendant additionally argues that the court incorrectly "applied the reasonable expectation of privacy test

[4]As it concerns the application of *Samson*, the defendant further asserts that, "[u]nlike *Samson* and *Knights*, [the defendant's] conditions

from *Katz* to determine that [the defendant] did not have standing." He argues that the reasonable expectation of privacy standard applies "[o]nly when [a defendant] is vicariously asserting the property rights of another or when the search involves an area not specifically protected by the fourth amendment" and that "[t]he *Katz* test has no place here because the search occurred in [the defendant's] home," which is "an area protected by the plain text of the fourth amendment." The defendant further argues that whether the search was reasonable in light of the defendant's "diminished expectation of privacy and the governmental interests involved . . . are not questions of standing."

The defendant's principal contention, which is that the court improperly applied the reasonable expectation of privacy standard to the search of his own residence, is contradicted by our courts' consistent application of that standard when determining whether a defendant has a cognizable fourth amendment interest, even when the challenged search or seizure involves an area specifically referenced in the text of the fourth amendment. See, e.g., *State* v. *Jacques*, supra, 332 Conn. 278 (applying *Katz* standard and concluding that defendant had reasonable expectation of privacy in apartment leased by defendant that police searched while defendant was incarcerated on unrelated charges); *State* v. *Pink*, 274 Conn. 241, 260, 875 A.2d 447 (2005) (warrantless strip search of inmate did not violate fourth amendment because inmate had no reasonable expectation of privacy); *State* v. *Santiago*, 224 Conn. 494, 504, 619 A.2d 1132 (1993) (warrantless arrest of defendant in open doorway of his home did not violate fourth amendment because defendant had no

of special parole were not expressed to him until *after* his sentence of special parole was already imposed"; therefore, the "defendant does not have the ability to be on notice of even the *existence* of the condition prior to its imposition." (Emphasis in original.) He alleges that "[t]he issue of having a 'choice' in accepting search conditions was a significant consideration in *Samson* and *Knights*." Having reviewed those cases, we are not persuaded that the timing of when the condition was expressed, nor the petitioner's ability to choose to sign the conditions were factors in those decisions.

reasonable expectation of privacy while standing in that area); *State* v. *Reddick*, 207 Conn. 323, 333–34, 541 A.2d 1209 (1988) (defendant had reasonable expectation of privacy in basement of two-family home at which he resided and, therefore, warrantless search of basement violated fourth amendment); *State* v. *Romero*, supra, 199 Conn. App. 54 (defendant on probation had diminished expectation of privacy in hotel room in which he resided in light of conditions of probation, such that warrantless search of room did not violate fourth amendment). Indeed, the Supreme Court in *Samson* applied the reasonable expectation of privacy test in concluding that the petitioner did not have an expectation of privacy in his person—an area explicitly protected by the fourth amendment.

To the extent that the defendant argues that the court incorrectly used the term "standing" in its analysis of whether the defendant had a reasonable expectation of privacy, we find this argument to be no more availing. Although the United States Supreme Court generally "has eschewed referring to the question of whether a person has a reasonable expectation of privacy in a place or object search as implicating notions of standing"; (internal quotation marks omitted) *State* v. *Gonzalez*, 278 Conn. 341, 347 n.10, 898 A.2d 149 (2006), citing *Rakas* v. *Illinois*, 439 U.S. 128, 139–40, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978); courts have continued to employ that term when considering whether a defendant challenging the constitutionality of a search possessed the requisite reasonable expectation of privacy in the area searched. See *Byrd* v. *United States*, 584 U.S. 395, 410, 138 S. Ct. 1518, 200 L. Ed. 2d 805 (2018) (noting that, although "[f]ourth [a]mendment standing . . . is not distinct from the merits and is more properly subsumed under substantive [f]ourth [a]mendment doctrine . . . [t]he concept of standing in [f]ourth [a]mendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable [f]ourth [a]mendment interest in the place searched before seeking relief for an unconstitutional search" (citation omitted; internal

quotation marks omitted)); see also *State* v. *Houghtaling*, 326 Conn. 330, 341, 163 A.3d 563 (2017) ("To challenge a search as unreasonable, a defendant must have standing. To establish standing, a defendant must show that he possesses a reasonable expectation of privacy in the area searched."), cert. denied, 584 U.S. 949, 138 S. Ct. 1593, 200 L. Ed. 2d 776 (2018); *State* v. *Kinch*, 168 Conn. App. 62, 76, 144 A.3d 509 (defendant failed to satisfy "burden of proving the existence of a reasonable expectation of privacy in the area of the vehicle searched" and, thus, "lacked standing to challenge the legality of that search"), cert. denied, 323 Conn. 930, 151 A.3d 383 (2016). Indeed, our Supreme Court has held that, if a court properly applies the *Katz* reasonable expectation of privacy test, it is immaterial that the trial court framed the inquiry as a matter of fourth amendment "standing" rather than as part of the merits of the fourth amendment claim. See *State* v. *Gonzalez*, supra, 347 n.10, 354 (noting that trial court's use of term " 'standing' " in denying motion to suppress "does not change our inquiry," and concluding that trial court properly denied motion to suppress on basis that defendant lacked reasonable expectation of privacy).[5]

The defendant next argues that "the court also erred in finding that, when [the defendant] signed his conditions of parole form, he consented to all searches, depriving him of standing to challenge any search at any time." He asserts that the court "relied on [the defendant's] 'consent' to hold that he did not have standing" and that there is no record to "support necessary findings of consent."

Although the defendant briefs this argument within his claim that the court improperly denied his motion

---

[5]We also note that it was the defendant who introduced the term "standing" in the proceedings in the trial court. Immediately prior to arguing the defendant's motion to suppress, defense counsel stated, "I'm prepared to make argument on standing" and then, in support of his argument, asserted that the defendant "had an expectation of privacy in his home."

to suppress, the record reveals that the court's finding regarding the defendant's consent arose in a different context: the finding he references was made in response to argument made by the assistant attorney general, on behalf of the Division of Parole and Community Services, concerning motions to quash.[6] Because the court did not reference consent in connection with the motion to suppress but, rather, made a proper finding that the defendant did not have an expectation of privacy, we are not persuaded that the court relied on a finding of consent to determine that the defendant did not have standing.[7]

In light of the foregoing, we conclude that the court's legal conclusion with respect to the defendant's fourth

---

[6]The motions to quash were filed in response to subpoenas filed by the defendant as part of his discovery efforts. After hearing argument from all parties on the first motion to quash, the court made the following finding: "The defendant signed parole conditions on February 17, 2021, which included, but [was] not limited to a condition of parole that he submit to searches of his person, possession, residence, or any other area under his control, at any time, announced or unannounced, with or without cause by Parole. The [United] [States] Supreme Court has held in *Samson* v. *California*, [supra, 547 U.S. 843], that individuals, such as [the defendant], who are on parole or special parole, who sign parole conditions, consent to having their place of residence, including spaces under their control, to being searched. Further, *Samson* held that parolees have an extremely diminished, if any, ex[pecta]tion of privacy. Therefore, the parolee, in this case, [the defendant], has consented to the search in question. . . . Therefore, the motion to quash the subpoena as to the manual of the Department of Parole is granted." As it concerned a separate motion to quash, the court provided, in part, "[t]he court finds that the defendant parolee has consented to this search by agreeing to the conditions of parole with a signature. Therefore, it is not relevant how a parole officer came to search his residence . . . . The motion to quash the subpoena as to disclosure of the confidential informant . . . is granted."

[7]The defendant also asserts that "the trial court's finding that [the defendant] waived all his fourth amendment rights by signing the parole form is not even supported by its plain text," arguing that "[t]he scope of search that is permissible under this alleged 'consent' form is far from a waiver of all of [the defendant's] fourth amendment rights." We are not convinced, as, again, the record reveals that the court did not make such a determination. Rather, after making the relevant findings, it concluded that "[the defendant] did not have an expectation of privacy at his residence on the day of the search. He waived any expectation of privacy by agreeing to the terms of his parole. He had no fourth

amendment challenge to the search of his residence was legally and logically correct, as it was supported by the court's proper finding that the defendant did not have an expectation of privacy in his residence during the search at issue.

## II

The defendant next claims that the court abused its discretion when it denied his motion to compel. The state responds that this claim is not reviewable because the defendant filed a conditional plea of nolo contendere in accordance with § 54-94a. We agree with the state.

The following additional procedural history is relevant to our resolution of this claim. On August 10, 2022, the defendant filed a motion to compel disclosure pursuant to Practice Book § 40-13A.[8] On August 12, the court held a hearing on the motion to compel and rendered a decision denying the motion primarily on the ground that the materials either were privileged or not subject to disclosure under Practice Book § 40-14 (1).[9]

On March 15, 2024, the defendant signed a plea of nolo contendere, which provided, inter alia, the following

amendment protection under *Samson*. Therefore, [the defendant] does not have standing to challenge this search." The court did not suggest that the defendant waived his fourth amendment right but, rather, that he waived his expectation of privacy and, therefore, could not invoke protection under the fourth amendment. This conclusion aligns with the well settled legal principles concerning a defendant's capacity to challenge a search discussed throughout this opinion.

[8]Practice Book § 40-13A provides: "Upon written request by a defendant and without requiring any order of the judicial authority, the prosecuting authority shall, no later than forty-five days from receiving the request, provide photocopies of all statements, law enforcement reports and affidavits within the possession of the prosecuting authority and his or her agents, including state and local law enforcement officers, which statements, reports and affidavits were prepared concerning the offense charged, subject to the provisions of Sections 40-10 and 40-40 et seq."

[9]Practice Book § 40-14 provides in relevant part: "Subject to Sections 40-13 and 40-13A and except for the substance of any exculpatory material contained herein, Sections 40-11 through 40-14 do not authorize or require disclosure or inspection of: **(1)** Reports, memoranda or other internal documents made by a prosecuting authority or by law

statement: "By signing this paper, I plead nolo contendere (no contest) and put myself on the clemency of the court on the condition that I have the right to take an appeal under section 54-94a of the General Statutes. I understand that I can file an appeal of a motion to suppress or a motion to dismiss only if I do so within the time allowed by law and only if the trial court has determined that a ruling on the motion would be dispositive of the case."

We conclude that the defendant's claim is not reviewable because the defendant filed a conditional plea of nolo contendere in accordance with § 54-94a, which provides in relevant part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to dismiss would be dispositive of the case. *The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. . . .*" (Emphasis added.) The court's denial of the defendant's motion to compel disclosure is not reviewable because it is not one of the issues set forth in § 54-94a for appeal from a judgment on a plea of nolo contendere. See *State* v. *Jevarjian*, 124 Conn. App. 331, 352–53, 4 A.3d 1231 (2010), appeal dismissed, 307 Conn. 559, 58 A.3d 243 (2012).[10]

### III

The defendant's final claim asserts that the court improperly denied his pretrial motion to dismiss the

enforcement officers in connection with the investigation or prosecution of the case . . . ."

[10]In his reply brief, the defendant asserts for the first time that this court should invoke its inherent supervisory authority to review his unreviewable claim "because these issues will very likely be raised again in the event of a remand and addressing the claim will 'serve the

narcotics charges for insufficient evidence, arguing that the court failed to "review the evidence that existed at that time and determine whether it was sufficient to establish probable cause to justify proceeding with the trial." We disagree.

The following additional procedural history is relevant to our resolution of this claim. At the defendant's arraignment, held on December 28, 2021, the court, *Schuman, J.,* stated that it had read the police report and "[p]robable cause is found." On February 20, 2024, the defendant filed a motion to dismiss counts one and two for insufficient evidence pursuant to General Statutes §54-56 and Practice Book §41-8 (5)[11] because the state did not have in its possession results from the Connecticut State Forensic Laboratory (state lab) "confirming that the substances seized at the time of the arrest [were] illegal or narcotics." That same day, prior to the commencement of jury selection, defense counsel made the following oral argument in support of the motion: "The state has not furnished or obtained any results from any chemical testing of the substances that they purport to be drugs in this case. . . . There's absolutely no evidence to present to a court or a jury that the substances seized were illegal. Without proper admissible testing of the substances and in testimony of the results of those tests, the state is without sufficient evidence to bring this claim." The prosecutor responded that "those substances were tested and probable cause was found." Defense counsel responded by stating that the ValTox testing and

important interests of judicial efficiency.' " "Generally, this court does not consider claims raised for the first time in a reply brief." *Perry* v. *State*, 94 Conn. App. 733, 740 n.5, 894 A.2d 367, cert. denied, 278 Conn. 915, 899 A.2d 621 (2006). Even if the defendant's request were proper, which is not our position, the defendant's argument that we should address this claim in the interest of judicial efficiency is not applicable because we are not remanding this case for further proceedings.

[11]Practice Book §41-8 provides in relevant part: "The following defenses or objections, if capable of determination without a trial of the general issue, shall, if made prior to trial, be raised by a motion to dismiss the information . . . (5) Insufficiency of evidence or cause to justify the bringing or continuing of such information or the placing of the defendant on trial . . . ."

narcotic testing done by the Waterbury Police Department in the field would be subject to a *Porter* hearing and that they would be inadmissible. The court did not rule on the motion to dismiss, instead reserving its decision for the start of trial.

At the outset of the hearing on the motion to dismiss held on February 23, 2024, defense counsel asked the court to inquire of the state whether it had the state lab's results on what the state claimed to be controlled substances. Defense counsel asserted that, if the state did not have the results, there was insufficient evidence to bring the case to trial and the case should be dismissed. The prosecutor responded that it believed there was probable cause to proceed and stated, "[A]t this particular point, there is no evidence to be presented today because we are not scheduled for evidence." The court then noted that "there's already been a finding of probable cause to proceed in this matter." The prosecutor explained that "[t]he state would not proceed forward based specifically on the ValTox testing which gets us to probable cause," stating that the state did "not feel that that is sufficient to meet our burden." The court then advised that, if the state lab tests were not available when the trial was scheduled to commence, the defendant could renew the motion to dismiss and, if they are available, the court would give defense counsel time to review those tests. Defense counsel argued that "the state is alleging that [the defendant] possessed with intent to sell controlled substances with zero evidence, that a jury could consider, that they are controlled substances." The court recognized that defense counsel's argument regarding the insufficiency of the state's evidence seemed to refer to admissible evidence, i.e., evidence "a jury could consider," and noted, "I'm not going to pass on the admissibility of evidence." Defense counsel inquired again as to whether the state had sufficient evidence to proceed, to which the prosecutor responded, "[T]he state doesn't need sufficient evidence to prove [its] case until the day [it] put[s] it in front of the jury." Shortly thereafter, the

court denied the motion without prejudice and stated that it could be renewed.[12]

We begin by setting forth the legal principles that guide our review of this claim. Section 54-56 provides that "[a]ll courts having jurisdiction of criminal cases shall at all times have jurisdiction and control over informations and criminal cases pending therein and may, at any time, upon motion by the defendant, dismiss any information and order such defendant discharged if, in the opinion of the court, there is not sufficient evidence or cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial." "When assessing whether the state has sufficient evidence to show probable cause to support continuing prosecution [following a motion to dismiss under § 54-56], the court must view the proffered proof, and draw reasonable inferences from that proof, in the light most favorable to the state. . . . The quantum of evidence necessary to [overcome a motion to dismiss] . . . is less than the quantum necessary to establish proof beyond a reasonable doubt at trial . . . . In [ruling on the defendant's motion to dismiss], the court [must] determine whether the [state's] evidence would warrant a person of reasonable caution to believe that the [defendant had] committed the crime." (Citations omitted; internal quotation marks omitted.) *State* v. *Pelella*, 327 Conn. 1, 19, 170 A.3d 647 (2017).

This court has explained that, "[w]here a motion to dismiss an information against an accused is made prior to trial, only probable cause sufficient to justify the continued prosecution need be established. The probable cause determination is, simply, an analysis of probabilities. . . . The determination is not a technical one, but is

[12]Earlier in the hearing, the court told defense counsel, "[A]t this point in time if the state does not have that evidence, how the state chooses to proceed will be up to them. . . . I'm going to assume that if they don't have that evidence that then, at the close of their case, you would be filing . . . a request for a directed verdict. I will allow you to renew your motion to dismiss. But, again, I'm not going to engage in a trial within a trial at this point in time."

informed by the factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act. . . . The existence of probable cause does not turn on whether the defendant could have been convicted on the same available evidence. . . . Furthermore, we have concluded that proof of probable cause requires less than proof by a preponderance of the evidence. . . . To establish probable cause, the state was not required to present evidence as to each of the elements of the offense in a form that would be admissible at a later trial. In *State* v. *Kinchen*, [243 Conn. 690, 702–703, 707 A.2d 1255 (1998)], our Supreme Court found information contained in a written police report sufficient to establish probable cause to justify the continued prosecution of a defendant." (Internal quotation marks omitted.) *State* v. *Russo*, 221 Conn. App. 729, 741–42, 303 A.3d 279 (2023), cert. denied, 348 Conn. 938, 307 A.3d 273 (2024).

The defendant argues that "the presumptive field tests . . . were not sufficient, on their own, to establish probable cause." In support of his argument, he relies on this court's holding in *State* v. *Gayle*, 64 Conn. App. 596, 602, 781 A.2d 383, cert. denied, 258 Conn. 920, 782 A.2d 1248 (2001). As the state points out, however, the defendant's reliance on *Gayle* is misplaced for two reasons. First, the issue in *Gayle* was whether the evidence presented at trial established guilt beyond a reasonable doubt. Id., 602. Conversely, the present matter concerns a pretrial motion to dismiss, for which the state only needed to proffer evidence establishing probable cause. Second, in *Gayle*, the state offered only the testimony of a fourteen year old with no specialized knowledge to prove the character of the substance. Id., 601–602. In this matter, the state proffered field tests of the drugs conducted by law enforcement officials.

Our Supreme Court, in *State* v. *Singleton*, 274 Conn. 426, 440–42, 876 A.2d 1 (2005), considered whether field tests presented sufficient evidence in the context of a probation revocation hearing. There, the court held

that "the evidence of the field test, in conjunction with the corroborating evidence, was sufficient to establish the nature of the substance by a preponderance of the evidence."[13] Id., 442. Additionally, other courts, in evaluating whether evidence supported probable cause to arrest, have recognized that "[a] reasonably trustworthy field test that returns a 'positive' result for the presence of cocaine is a sufficient basis for probable cause." *Green* v. *Webster*, 359 Fed. Appx. 249, 251 (2d Cir. 2010); see also *United States* v. *Uricoechea-Casallas*, 946 F.2d 162, 166 (1st Cir. 1991) (agents had probable cause to arrest where field test of white powder indicated presence of cocaine and defendant did not deny ownership).

Unlike *Singleton,* in which the state's burden of proof was preponderance of the evidence, the field tests in this case were proffered by the state only to establish probable cause. "[P]roof of probable cause requires less than proof by a preponderance of the evidence." (Internal quotation marks omitted.) *State* v. *Russo*, supra, 221 Conn. App. 742. In his appellant brief, the defendant concedes that "all but one of the [field test] results were positive for the presumptive presence of narcotics." In viewing this evidence in the light most favorable to the state, we conclude that the court properly determined that there was probable cause on the basis of the positive field tests.[14]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[13]The court declined to decide whether a "field test alone would be sufficient to establish, beyond a reasonable doubt, that the substance tested was crack cocaine." *State* v. *Singleton*, supra, 274 Conn. 442.

[14]The defendant posits that "it is clear from the record that the trial court's determination was not dependent on the field test results" and that it "based its denial . . . solely on the state's assertion that they would have the results at some point . . . ." Our thorough review of the record reveals that the court was made aware of and considered the field tests. On February 20, 2024, after hearing argument on the motion to dismiss, the court declined to rule on the motion, but acknowledged "that [the substances] were [ValTox] tested and there's other methodology which, if [the state] chose to pursue they still could proceed today on that charge."